**David F. Sugerman**, OSB No. 862984
**Nadia H. Dahab**, OSB No. 125630
**Jessica Greenlick Snyder,** OSB No. 134911
SUGERMAN DAHAB
101 SW Main Street, Suite 910
Portland, OR 97204
Tel: 503-228-6474
david@sugermandahab.com
nadia@sugermandahab.com
jessica@sugermandahab.com

*Attorneys for Plaintiffs and the Proposed Class*

**Randall K. Pulliam** (*pro hac vice* forthcoming)
**Edwin Lee Lowther III** (*pro hac vice* forthcoming)
**Courtney Ross Brown** (*pro hac vice* forthcoming)
**Nicholas Lorigan** (*pro hac vice* forthcoming)
**Keira Newland** (*pro hac vice* forthcoming)
CARNEY BATES & PULLIAM, PLLC
One Allied Drive, Suite 1400
Little Rock, AR 72202
Tel: (501) 312-8500
rpulliam@cbplaw.com
llowther@cbplaw.com
cbrown@cbplaw.com
clorigan@cbplaw.com
knewland@cbplaw.com

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

SAMANTHA GAVROS and KRISTL COOK, on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

P.I.M. BRANDS USA, INC.

Defendant.

Case No. 3:26-cv-1908

**CLASS ACTION COMPLAINT**

Unlawful Trade Practices Act (Willful Violation) (ORS 646.608); Unlawful Trade Practices Act (Reckless or Knowing Violation) (ORS 646.608)

DEMAND FOR JURY TRIAL

Plaintiffs Samantha Gavros and Kristl Cook (collectively, "Plaintiffs"), individually and on behalf of all others similarly situated, bring this class action against P.I.M. Brands USA, Inc. ("Defendant") and allege as follows:

**INTRODUCTION**

1. Plaintiffs bring this class action on behalf of consumers who purchased Defendant's Welch's Zero Sugar Fruity Bites (the "Products") during the applicable Class Period. Defendant formulates, labels, markets, advertises, distributes, and sells the Products throughout the United States, including in Oregon. Defendant sells the Products through retail stores, online retailers, and other channels of commerce.

2. The Products include, but are not limited to, the following: Welch's Zero Sugar Fruity Bites Mixed Fruit; Welch's Zero Sugar Fruity Bites Island Fruit; and Welch's Zero Sugar Fruity Bites Berries 'n Cherries.[1]

3. Defendant prominently markets the Products to consumers as "ZERO SUGAR" and through substantially similar representations that communicate to consumers that the Products contain no sugar (collectively, the "Zero Sugar Representations"). These representations are false and misleading. In reality, the Products contain a substantial quantity of allulose, and put simply, allulose is sugar. Allulose is the second listed ingredient in the Products' ingredient lists, indicating it is the second most prevalent ingredient by weight in the Products. Upon information and belief, each serving of the Products contains 0.5 grams or more of allulose. Allulose is a monosaccharide and is included within the federal regulatory definition of "Total Sugars." *See* 21 C.F.R. § 101.9(c)(6)(ii) (defining "Total Sugars" as "the sum of all free

---

[1] *Zero Sugar Fruity Bites*, Welch's Fruit Snacks, https://welchsfruitsnacks.com/product-categories/welchs-zero-sugar-fruity-bites/ (last visited Sept. 5, 2026). Plaintiffs reserve the right to add to the list of Products if more become apparent during the litigation.

mono- and disaccharides”). Federal regulation permits such a claim only if “[t]he food contains less than 0.5 g of sugars, as defined in § 101.9(c)(6)(ii) . . . per labeled serving.” 21 C.F.R. § 101.60(c)(1). Oregon has adopted and incorporated federal food labeling regulations, including 21 C.F.R. Part 101, which encompasses §§ 101.60(c)(1) and 101.9(c)(6)(ii). OAR 603-025-0190. The Products thus contain a substance that constitutes “Total Sugars” under the governing federal and parallel state regulations in an amount that equals or exceeds the 0.5-gram-per-serving ceiling for a product represented as “zero sugar.” 21 C.F.R. § 101.60(c)(1).

4. The deception alleged here is straightforward. Defendant tells consumers, in prominent and unqualified terms, that the Products contain “ZERO SUGAR.” Yet the Products are deliberately formulated with a substantial amount of sugar.

5. Defendant nevertheless seeks to capitalize on consumers’ desire for products that are genuinely free of sugar by falsely, misleadingly, and deceptively labeling and advertising the Products with the Zero Sugar Representations. Defendant’s Zero Sugar Representations appear prominently on the Products’ labels and in Defendant’s advertising and marketing materials. Defendant thereby conveys an unqualified message to consumers as a selling point: the Products contain zero sugar.

6. Defendant knows that consumers place substantial value on products represented as containing no sugar and uses the Zero Sugar Representations to induce consumers to purchase the Products. Among other things, Defendant charges consumers for the Products based upon the value consumers place on the Products’ represented characteristics, including the representation that they contain no sugar. Defendant’s “ZERO SUGAR” Products are priced at a premium over comparable Welch’s Fruit Snacks products that do not carry such representations, as set forth below, further demonstrating the economic value of the Zero Sugar Representations.

7. Plaintiffs and Class Members therefore suffered economic injury at the point of purchase. They paid a price premium for Products represented as having "ZERO SUGAR," but they received Products with a substantial amount of sugar.

8. Plaintiffs bring this action individually and in a representative capacity on behalf of similarly situated consumers who purchased the Products during the relevant Class Period. Plaintiffs seek, on their individual behalf and on behalf of the Class, actual damages, statutory damages, and all other relief available under applicable law to remedy Defendant's deceptive conduct and prevent Defendant from continuing to market, advertise, and sell the Products, containing substantial quantities of allulose, using the false and misleading Zero Sugar Representations.

9. As set forth below, Defendant's conduct violates applicable consumer-protection laws, including Oregon's Unlawful Trade Practices Act.

## PARTIES

10. Samantha Gavros is, and at all times relevant hereto was, a citizen of Oregon residing in Portland, Oregon. She purchased Welch's Zero Sugar Fruity Bites for personal use from Amazon.com on multiple occasions in 2026, including on or about May 18, 2026, for $7.98; May 28, 2026, for $4.49; and May 29, 2026, for $7.98.

11. Kristl Cook is, and at all times relevant hereto was, a citizen of Oregon residing in or near Portland, Oregon. On or about September 2, 2026, she purchased two packages of Welch's Zero Sugar Fruity Bites Mixed Fruit for personal use from Walgreens.

12. P.I.M. Brands USA, Inc. ("PIM Brands") is a Delaware corporation with its principal place of business at One PIM Plaza, Park Ridge, New Jersey 07656. It formulates, labels, markets, distributes, and sells the Products throughout the United States pursuant to an

exclusive trademark license from Welch Foods, Inc., A Cooperative. PIM Brands is identified on the Products' packaging as the manufacturer or seller of the Products.

**JURISDICTION AND VENUE**

13. The Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because the proposed Class includes more than 100 members, the aggregate amount in controversy exceeds five million dollars, exclusive of interest and costs, and at least one member of the proposed Class is a citizen of a state different from at least one Defendant.

14. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events, omissions, and acts giving rise to the claims herein occurred in this district. Plaintiffs purchased the Products in this District in Oregon. Defendant has deliberately marketed, advertised, distributed, and sold the Products within this District, and Defendant receives substantial revenue from sales in this District.

15. The Court has personal jurisdiction over Defendant based upon sufficient minimum contacts which exist between Defendant and Oregon. Defendant's Products are advertised, marketed, distributed, and sold throughout Oregon. Defendant engages in the conduct alleged in this Complaint within Oregon. Defendant's activity within Oregon is substantial, not merely isolated. Defendant has purposefully availed itself of the Oregon market and has sufficient minimum contacts, rendering the exercise of jurisdiction by the Court permissible under traditional notions of fair play and substantial justice.

## ALLEGATIONS OF FACT

### Defendant Markets, Advertises, and Sells the Products as "ZERO SUGAR"

16. Defendant formulates, labels, markets, advertises, distributes, and sells the Products to consumers throughout the United States, including in Oregon. The Products are sold online and through major retailers, including Walgreens and other retail stores.

17. Defendant markets and sells the Products as food products intended for purchase and consumption by ordinary consumers. Upon information and belief, Defendant controls the Products' formulation, ingredients, packaging, labeling, advertising, website content, point-of-sale materials, and other representations made to consumers concerning the Products. Defendant therefore possesses, or has access to, information concerning the Products' ingredients and formulation that consumers do not possess.

18. Defendant prominently represents that the Products are "ZERO SUGAR" and/or makes other substantially similar representations communicating that the Products contain no sugar. These representations are affirmative representations concerning a material characteristic of the Products.

19. The Zero Sugar Representations appear, or have appeared, on the Products' packaging, and in Defendant's other marketing and advertising materials, including Defendant's website, Amazon product listings, and other retailer listings. Defendant thus places the Zero Sugar Representations directly before consumers at the time they encounter, evaluate, and decide whether to purchase the Products.

20. As depicted below, Defendant's Products bear the Zero Sugar Representations on the front label:[2]




*Figure 1*

2 Screenshots of the Products' packaging as displayed Defendant's website. *Zero Sugar Fruity Bites*, Welch's Fruit Snacks, https://welchsfruitsnacks.com/product-categories/welchs-zero-sugar-fruity-bites/ (last visited Sept. 5, 2026).


Welch's
FAMILY FARMER OWNED
BERRIES 'N CHERRIES
Natural & Artificial Flavors
ZERO SUGAR
FRUITY BITES
25% Fewer Calories Than Our Original Fruit Snacks
Chewy Not Sticky • Gluten Free
NET WT 3 OZ (85 g)
Welch's® Zero Sugar Fruity Bites
Berries 'n Cherries

*Figure 2*




*Figure 3*

21. The Zero Sugar Representations also appear prominently in the Products' description and marketing materials, such as "[s]mart snacking made easy with zero sugar," "GLUTEN FREE, SUGAR FREE, AND FAT FREE," and "great for travel, commuting, outdoor activities, or busy days when you need a convenient, gluten free snack with zero sugar."[3]

[3] *Welch's Zero Sugar Fruity Bites - Mixed Fruit - 3 Oz - 6 Pack*, Amazon.com, https://www.amazon.com/Welchs-Sugar-Fruity-Gluten-Snacks/dp/B0DW5ZTYMB (last visited Sept. 5, 2026).

22. The Zero Sugar Representations are displayed prominently and are presented to consumers as an objective fact concerning the Products, rather than as an opinion, estimate, or qualified statement.

23. Defendant repeatedly uses the false Zero Sugar Representations to identify, distinguish, brand, advertise, and sell the Products in the marketplace. The representations therefore form an important part of the Products' labeling, branding, advertising, and overall marketing message. The Zero Sugar Representations also serve to distinguish the Products from Defendant's other products, which Defendant acknowledges do contain sugar.

**The Products Contain Allulose.**

24. Contrary to Defendant's Zero Sugar Representations, the Products contain a substantial amount of sugar per serving in the form of allulose. Allulose is the second-listed ingredient, and under federal labeling law, ingredients must be listed in descending order of predominance by weight. 21 C.F.R. § 101.4(a)(1). Thus, allulose is the second most prominent ingredient in the Products.

25. Allulose is not an incidental contaminant, trace substance, or ingredient that appears in the Products by accident. It is an intentionally selected ingredient in the Products' formulation. Defendant deliberately uses allulose in manufacturing the Products and knowingly places Products containing allulose into the marketplace.

26. Allulose is a naturally occurring sugar found in small amounts in figs, raisins, wheat, maple syrup, and molasses. Chemically, allulose is a monosaccharide, just like fructose. Allulose and fructose are both sugar carbohydrates.

27. Defendant knows that the Products contain allulose because Defendant formulates, manufactures, packages, markets, and/or sells the Products and controls the Products' ingredient information and labeling.

28. Allulose is an ingredient intentionally included in the Products' formulation and identified in the Products' ingredient list. For example, allulose is the Products' second-listed ingredient for the "Mixed Fruit" flavor: "Maltitol, ***allulose***, maltodextrin, modified corn starch, gelatin, citric acid (acidulant), natural and artificial flavors, carnauba wax, annatto (color), turmeric (color), and fruit and vegetable juice (color)."[4] Similarly, allulose is the second-listed ingredient for the "Island Fruit" flavor: "Maltitol, ***allulose***, maltodextrin, modified corn starch, gelatin, citric acid (acidulant), natural and artificial flavors, carnauba wax, annatto (color), turmeric (color), spirulina (color), and fruit and vegetable juice (color)."[5]

29. Under federal labeling law, ingredients must be listed in descending order of predominance by weight. 21 C.F.R. § 101.4(a)(1). Thus, the fact that allulose is identified as the second ingredient further demonstrates that allulose is a substantial component of the Products, rather than a de minimis or incidental ingredient.

30. Thus, Defendant's own admissions both establish the presence of allulose and indicate a high quantity of allulose in the Products.

31. The Products therefore contain a substantial quantity of sugar in the form of allulose notwithstanding Defendant's repeated representation that the Products contain "ZERO SUGAR."

---

4 *Mixed Fruit*, Welch's Fruit Snacks, https://welchsfruitsnacks.com/products/mixed-fruit-3/ (last visited Sept. 5, 2026).

5 *Island Fruits*, Welch's Fruit Snacks, https://welchsfruitsnacks.com/products/island-fruits-2/ (last visited Sept. 5, 2026).

32. Defendant's marketing creates a direct contradiction. Allulose is itself a sugar; a product sweetened with allulose is by definition a product containing sugar. By prominently telling consumers that the Products contain no sugar while intentionally formulating the Products with substantial quantities of allulose, Defendant deceives the public through misleading packaging statements and labels. This deception has earned Defendant substantial revenue while damaging a broad class of consumers across Oregon.

**Allulose is a Sugar Under the Applicable Definition.**

33. Federal law establishes specific requirements governing when a food manufacturer may represent a product as "sugar free," "zero sugar," or using a substantially similar nutrient-content claim. Under 21 C.F.R. § 101.60(c)(1), a food may not be labeled "sugar free," "zero sugar," or with a substantially similar claim unless it "contains less than 0.5 g of sugars, as defined in § 101.9(c)(6)(ii)," and satisfies the regulation's other requirements.

34. Section 101.9(c)(6)(ii), in turn, expressly defines "Total Sugars" broadly as "the sum of all free mono- and disaccharides (such as glucose, fructose, lactose, and sucrose)."

35. Allulose is a monosaccharide. It therefore falls within the express language of § 101.9(c)(6)(ii), which encompasses "all free mono- and disaccharides."

36. Nothing in the regulatory text of § 101.9(c)(6)(ii) excludes allulose from the definition of "Total Sugars."

37. The FDA's regulatory history confirms this reading. In its 2016 final rule revising the Nutrition Facts label, the FDA specifically considered the treatment of allulose and stated

that "[a]llulose, as a monosaccharide, must be included" in the Total Sugars declaration unless and until the agency adopted a different rule.[6]

38. The FDA's 2016 statement is consistent with the text of § 101.9(c)(6)(ii): because allulose is a monosaccharide, it falls within the regulation's definition of "Total Sugars."

39. The FDA subsequently issued guidance concerning allulose in October 2020. That guidance did not amend § 101.9(c)(6)(ii), did not promulgate a new definition of "Total Sugars," and did not formally exclude allulose from the regulatory definition of sugar.[7]

40. Instead, the 2020 guidance announced an exercise of enforcement discretion concerning the declaration of allulose on Nutrition Facts labels, pending further consideration through rulemaking. The guidance addressed the FDA's enforcement position concerning how allulose should be treated for purposes of specified nutrition-panel declarations; it did not amend the underlying regulation or establish a new definition of sugar.

41. Nothing in the 2020 guidance authorizes a manufacturer to disregard the separate regulatory requirements governing nutrient-content claims such as "zero sugar."

42. The FDA's decision not to enforce provisions of law does not amend the text of the law or absolve actors of their violations of law. The 2020 guidance therefore did not transform the regulatory definition of "Total Sugars" into a definition that excludes allulose.

43. Nor does the FDA's exercise of enforcement discretion establish that a manufacturer may affirmatively, and falsely, represent that a product contains "ZERO SUGAR"

---

[6] Food Labeling: Revision of the Nutrition and Supplement Facts Labels, 81 Fed. Reg. 33,742, 33,795-96 (May 27, 2016).

[7] United States FDA, The Declaration of Allulose and Calories from Allulose on Nutrition and Supplement Facts Labels: Guidance for Industry 1 (Oct. 2020).

while the product contains a substantial amount of monosaccharide encompassed by the regulation's definition of "Total Sugars."

44. The applicable state laws and regulations likewise incorporate and impose an identical or materially similar requirement governing the use of "zero sugar," "sugar free," and substantially similar representations as that imposed by federal law. OAR 603-025-0190 incorporates applicable federal food labeling requirements, including 21 C.F.R. Part 101, which encompasses §§ 101.60(c)(1) and 101.9(c)(6)(ii).

**The Zero Sugar Representations Are False and Misleading.**

45. Defendant represents the Products contain "ZERO SUGAR," but the Products contain a substantial amount of allulose per serving.

46. Because allulose is a monosaccharide that falls within the applicable definition of sugar and is the second-listed ingredient, upon information and belief, the Products' sugar content exceeds the less than 0.5-gram threshold required to lawfully utilize "ZERO SUGAR" nutrient-content claims. Thus, the Products cannot bear the "ZERO SUGAR" representations under § 101.60(c)(1).

47. Accordingly, Defendant's Products do not satisfy the federal regulatory standard governing the use of the Zero Sugar Representations, nor do they satisfy the identical state regulatory standards.

48. Defendant nevertheless prominently represents to consumers that the Products contain "ZERO SUGAR."

49. Defendant's representations that the Products contain "ZERO SUGAR" are objectively false.

50. The representations are also independently misleading to reasonable consumers because an unqualified "sugar free" or "zero sugar" representation communicates that the product contains no sugar, while Defendant's Products contain a substantial quantity of allulose.

51. The deception is particularly material because Defendant does not qualify its representations by stating that the Products are free only of certain types of sugar.

52. The prominence and repetition of the Zero Sugar Representations reinforce their significance. Defendant places the Zero Sugar Representations on the Products' packaging and uses them throughout Internet and retail product listings, thereby presenting the absence of sugar as an important attribute and selling point of the Products.

**Defendant Knew the Products Contain Substantial Amounts of Allulose**

53. Defendant knew that the Products contained substantial amounts of allulose before placing the Products on the market.

54. Defendant knew the amount of allulose contained in each serving of the Products.

55. Defendant necessarily possessed this information because Defendant controls the Products' formulation, ingredient specifications, manufacturing, packaging, labeling, and marketing.

56. Defendant also knew that consumers would encounter and consider the Zero Sugar Representations when deciding whether to purchase the Products. The product packaging and advertisements highlight the "ZERO SUGAR" nature of the Products.

57. Upon information and belief, Defendant selected and used the Zero Sugar Representations as part of a deliberate marketing strategy designed to distinguish the Products from competing products, including less costly versions of other fruit snacks containing

conventional sugar, and to appeal to consumers willing to pay a premium for products without sugar.

58. Defendant's repeated use of the Zero Sugar Representations on the Products' packaging and in its advertising was not the result of an isolated printing error, inadvertent omission, or one-time mistake. Rather, Defendant incorporated the representations into the Products' branding and marketing and sold the Products to customers while using those representations.

59. Upon information and belief, Defendant was aware that allulose is a sugar but nevertheless made a false nutrient-content claim that the Products were "ZERO SUGAR."

60. Defendant's use of the representations despite its knowledge of the Products' formulation further demonstrates that the representations were an intentional and material component of Defendant's marketing and sale of the Products.

61. Upon information and belief, Defendant continues to market and sell the Products using the Zero Sugar Representations.

62. Defendant's conduct was undertaken in the course of its business and in connection with the marketing, advertising, distribution, and sale of the Products to consumers.

63. Defendant had the ability to accurately describe the Products and disclose the presence and quantity of allulose, or to simply make no nutrient-content claim concerning sugar at all. Instead, Defendant affirmatively chose to market and sell the Products using the Zero Sugar Representations, thereby inducing consumers seeking products without sugar to purchase the Products.

**Plaintiffs and Consumers Were Injured by Defendant's Misrepresentations.**

64. Samantha Gavros purchased Welch's Zero Sugar Fruity Bites for personal use from Amazon.com on multiple occasions in 2026, including on or about May 18, 2026, for $7.98; May 28, 2026, for $4.49; and May 29, 2026, for $7.89.

65. Kristl Cook purchased Welch's Zero Sugar Fruity Bites Mixed Fruit for personal use, including from a Walgreens retail store located at 12335 NE Glisan St., Portland, Oregon, on or about September 2, 2026.

66. Kristl Cook paid approximately $7.64 for the Products.

67. Defendant charges a higher price for its "ZERO SUGAR" Products than for comparable products that do not bear the Zero Sugar Representations. For example, on Amazon, a twelve-pack of 5.0 oz bags of regular Welch's Fruit Snacks Mixed Fruit was priced at $18.03, or $0.30/ounce, while a twelve-pack of 3.0 oz bags of Welch's Zero Sugar Fruity Bites Mixed Fruit was priced at $42.57, or $1.18/ounce, approximately a 293.3% per-ounce premium for the Welch's Zero Sugar Fruity Bites.[8]

[8] *Welch's Zero Sugar Fruity Bites - Mixed Fruit - 3 Oz - 12 Pack*, Amazon.com, https://www.amazon.com/Welchs-Sugar-Fruity-Gluten-Snacks/dp/B0GHD451MX (last visited Sept. 5, 2026); *Welch's Fruit Snacks, Mixed Fruit, Sharing Size, 5 oz, 12 Ct*, Amazon.com, https://www.amazon.com/Welchs-Perfect-Stocking-Stuffer-Individual/dp/B003Z2N8GI (last visited Sept. 5, 2026).




*Figure 4*




*Figure 5*

68. Plaintiffs paid a price that incorporated the value of Defendant's Zero Sugar Representations but received Products that did not conform to those representations.

69. Plaintiffs therefore suffered economic injury at the point of purchase.

70. Plaintiffs did not receive the benefit of the bargain for which they paid. Instead, Plaintiffs received Products that contained a substantial amount of allulose despite Defendant's representations that the Products contained "ZERO SUGAR."

71. Plaintiffs' injury was caused by Defendant's misrepresentations.

72. The same deception affected other consumers who purchased the Products after encountering the Zero Sugar Representations. Those consumers were exposed to the same materially misleading representations, purchased Products containing a substantial amount of sugar, and received Products that did not conform to Defendant's representations.

73. The challenged conduct is therefore consumer-oriented and arises from Defendant's common marketing, labeling, advertising, and sale of the Products to the public.

74. Defendant's conduct constitutes deceptive, misleading, unfair, and/or unlawful conduct under the consumer-protection laws applicable to Plaintiffs' purchases and claims, including, as applicable, the Oregon Unlawful Trade Practices Act.

75. Defendant made representations concerning the Products that were objectively false and/or misleading to reasonable consumers.

76. Defendant's conduct caused Plaintiffs to suffer ascertainable economic injury in the form of a price premium. Plaintiffs paid more for the Products than the Products were worth, and more than they would have paid, because Defendant's deceptive representations inflated the price of the Products.

77. As a direct and proximate result of Defendant's deceptive, misleading, unfair, and unlawful conduct described above, Plaintiffs and members of the proposed Class were injured in fact and suffered ascertainable economic losses when they paid a premium for products bearing Defendant's false or misleading Zero Sugar Representations. The foregoing allegations establish

Plaintiffs' and the proposed Class members' claims arising from Defendant's common course of conduct, which forms the basis for the class allegations set forth below.

## CLASS ALLEGATIONS

78. Plaintiffs bring this case as a class action pursuant to Fed. R. Civ. P. 23 on their own behalf and on behalf of all others similarly situated. The proposed Class is defined as follows:

> All persons who, during the maximum period of time permitted by law, purchased the Products in the State of Oregon for personal, family, or household use, and not for resale.

79. The Class does not include: (i) Defendant, its assigns, successors, and legal representatives; (ii) any entities in which Defendant has controlling interests; (iii) federal, state, and/or local governments, including, but not limited to, their departments, agencies, divisions, bureaus, boards, sections, groups, councils, and/or subdivisions; (iv) any judicial officer presiding over this matter and persons within the third degree of consanguinity to such judicial officer; and (v) Plaintiffs' counsel and Defendant's counsel.

80. Plaintiffs reserve the right to amend or otherwise alter the class definition presented to the Court at the appropriate time in response to facts learned through discovery, legal arguments advanced by Defendant, or otherwise.

81. Members of the Class are so numerous that joinder of all members is impracticable. Upon information and belief, the Class consists of thousands of purchasers. Accordingly, it would be impracticable to join all members of the Class before the Court.

82. There are numerous questions of law or fact common to all members of the putative Class. Included within the common questions of law or fact are:

a. Whether the Products contain allulose and, if so, the amount of allulose contained in the Products;

b. Whether allulose is a sugar under the applicable laws, regulations, and standards governing the Zero Sugar Representations;

c. Whether Defendant represented that the Products contained "ZERO SUGAR," are "sugar free," or substantially similar nutrient-content claims;

d. Whether these representations were false, deceptive, misleading, or otherwise unlawful under the laws asserted herein;

e. Whether Defendant's labeling, packaging, advertising, marketing, and sale of the Products constituted consumer-oriented conduct and/or advertising directed to consumers;

f. Whether Defendant knew that the Products contained allulose and that the Products did not conform to the Zero Sugar Representations;

g. Whether Defendant's conduct violated the Oregon Unlawful Trade Practices Act, ORS 646.605 *et seq.*;

h. Whether Defendant's conduct caused economic injury to purchasers of the Products and the appropriate method for measuring such injury; and

i. Whether Plaintiffs and Class Members are entitled to actual damages or statutory damages and, if so, in what amount.

83. Plaintiffs' claims are typical of the claims of the Class members they seek to represent. Each Plaintiff, like the Class members, purchased Defendant's Products labeled with Defendant's deceptive Zero Sugar Representations. Each Plaintiff purchased the Products during the applicable class period and was exposed to the same challenged Zero Sugar Representations. Each Plaintiff suffered the same type of economic loss as the other Class members. Plaintiffs'

and the Class members' claims are based on the same legal theories and arise from the same course of conduct by Defendant.

84. Plaintiffs are adequate representatives because they have no interests adverse to those of the Class, are committed to the vigorous prosecution of this action, and have retained skilled and experienced counsel. Plaintiffs will fairly and adequately represent and protect the interests of the Class as required by Fed. R. Civ. P. 23(a)(4).

85. A class action is superior to all other available methods for the fair and efficient adjudication of the claims asserted in this action. Common questions of law and fact predominate over any questions affecting only individual Class members, and a class action is superior because the common issues can be resolved through common evidence and a single adjudication. Individual joinder of all Class members is impracticable, and no other available method of adjudication would provide a more efficient or consistent means of resolving the claims asserted herein. The prerequisites to maintaining this action pursuant to Federal Rule of Civil Procedure 23(b)(3) are satisfied for at least the following reasons:

a. The central issues in this action, including whether the Products contain allulose, whether allulose constitutes sugar under the applicable laws and regulations, what Defendant represented concerning the Products' sugar content, whether those representations were false or misleading, whether Defendant knew the Products did not conform to those representations, and whether Defendant's conduct violated the applicable consumer-protection statutes, are common to the Class and predominate over any individual questions;

b. The Zero Sugar Representations were disseminated to consumers through common labeling, packaging, advertising, and marketing materials, such that the

principal evidence concerning Defendant's conduct, the content of the representations, and their alleged falsity or misleading nature will be common to the Class;

c. To the extent individual issues exist concerning the circumstances of particular purchases, such issues do not predominate over the common questions because liability will principally turn on Defendant's uniform conduct, the Products' characteristics, the Defendant's representations, and the applicable law;

d. The economic injury alleged by Plaintiffs and the Class arises from the same alleged misconduct and can be established through common evidence and a common methodology. Individual differences, if any, in the amount paid, purchase date, quantity purchased, or resulting monetary recovery do not defeat predominance where the existence and methodology of the alleged injury can be established through common proof;

e. Given the relatively modest value of individual Class members' claims compared with the cost and burden of individual litigation, many Class members would have little incentive or ability to pursue their claims individually. A class action therefore provides an effective mechanism for Class members to obtain relief for alleged injuries that might otherwise go unremedied;

f. Class members have no substantial interest in individually controlling the prosecution of separate actions because the claims arise from Defendant's common course of conduct and present substantially overlapping factual and legal issues;

g. Concentrating the claims in a single proceeding is desirable because the alleged misconduct involves common Products, common representations, common labeling and marketing practices, and common questions concerning Defendant's conduct. A single proceeding will promote consistent adjudication of those issues and avoid unnecessary duplication of discovery, motion practice, expert testimony, and trial proceedings;

h. Individual litigation would create a substantial risk of inconsistent or varying adjudications concerning the same Products, Representations, and underlying conduct. Class-wide adjudication will promote consistency and judicial economy;

i. There are no pending individual actions known to Plaintiffs that would make separate adjudication a preferable method of resolving the controversy, and concentrating the claims in this forum is desirable and efficient; and

j. This action is manageable as a class action because the central liability issues are capable of resolution through common evidence and because any individualized issues concerning damages or other forms of relief can be addressed through appropriate class-wide methodologies, claim procedures, or other case-management mechanisms ordered by the Court.

## CLAIM FOR RELIEF

**Violation of the Oregon Unlawful Trade Practices Act**
**ORS 646.608(1)(e), (g), and 646.638**

86. Plaintiffs restate and reallege the preceding allegations set forth in paragraphs 1 through 85 as though fully set forth herein.

87. This cause of action is brought pursuant to the Oregon Unlawful Trade Practices Act ("Oregon UTPA"), ORS 646.605 *et seq*., on behalf of Samantha Gavros, Kristl Cook, and

the Oregon Class, who purchased the Products in Oregon within the applicable limitations period.

88. ORS 646.608(1)(e) declares it an unlawful trade practice to represent that goods "have . . . characteristics, ingredients, uses, benefits, quantities or qualities that the . . . goods do not have." ORS 646.608(1)(g) declares it an unlawful trade practice to represent that goods "are of a particular standard, quality, or grade" when they are of another.

89. Each of Defendant's Zero Sugar Representations is a representation within the meaning of both subsections because each states that the Products contain "ZERO SUGAR" when, in fact, upon information and belief, the Products contain a substantial quantity of allulose per serving. Allulose is a substance that constitutes sugar under the applicable regulatory definition. By making that representation, Defendant misrepresented that the Products possessed characteristics, ingredients, quantities, and qualities that they did not have and that they were of a particular standard or quality when they were of another.

90. Samantha Gavros, Kristl Cook, and members of the Oregon Class purchased the Products for personal, family, or household purposes and not for resale.

91. Allulose is a monosaccharide and therefore a sugar under 21 C.F.R. § 101.9(c)(6)(ii). Allulose is the second-listed ingredient in the Products, and the Products contain a substantial amount of allulose per serving. The Products therefore did not possess the represented "ZERO SUGAR" characteristic or quality.

92. ORS 616.250(1) provides that food is misbranded if "its labeling is false or misleading in any particular." OAR 603-025-0190 incorporates the FDA's food-labeling rules, including 21 C.F.R. Part 101. The Products do not comply with 21 C.F.R. § 101.60(c)(1), which prohibits a "zero sugar," "sugar free" or substantially similar nutrient-content claim where the

food contains 0.5 grams or more of sugars, as defined in § 101.9(c)(6)(ii), per labeled serving. The Products are therefore misbranded under applicable Oregon law.

93. The Zero Sugar Representations had a tendency to mislead consumers acting reasonably under the circumstances. An ordinary consumer would understand “ZERO SUGAR” or “sugar free” to mean that the Products contained no sugar.

94. Samantha Gavros, Kristl Cook, and members of the Oregon Class suffered ascertainable losses as a result of Defendant’s unlawful trade practices. They paid a price premium for Products represented as containing no sugar. Defendant charges a higher per-ounce price for its Welch’s Zero Sugar Fruity Bites than for comparable Welch’s fruit snacks products that are not represented as containing zero sugar. Had Defendant accurately labeled the Products, Samantha Gavros, Kristl Cook, and members of the Oregon Class would have paid less for the Products.

95. The ascertainable loss of the Oregon Class is a premium-price loss. Defendant’s Zero Sugar Representations inflated the market price of the Products, and Samantha Gavros, Kristl Cook, and each member of the Oregon Class paid more for the Products than they otherwise would have paid.

96. Defendant’s violations of the Oregon UTPA were willful within the meaning of ORS 646.638(1). A violation is willful when the person committing it “knew or should have known that the conduct of the person was a violation.” ORS 646.605(10). Defendant formulates, manufactures, packages, and markets the Products. Defendant knew or should have known the Products contained allulose and knew the Products bore the Zero Sugar Representations. Defendant knew or should have known that its conduct constituted a violation of the Oregon UTPA.

97. Defendant's violations were also reckless and knowing within the meaning of ORS 646.638(8)(a). The FDA stated in its 2016 rulemaking that allulose, "as a monosaccharide, must be included" in the Total Sugars declaration. 81 Fed. Reg. 33,742, 33,795–96 (May 27, 2016). That published statement put Defendant on notice that allulose constitutes sugar under the applicable regulatory definition.

98. Under ORS 646.638(8), statutory damages may be recovered on behalf of class members, where plaintiffs establish that the class members sustained an ascertainable loss as a result of Defendant's reckless or knowing use or employment of an unlawful trade practice.

99. Pursuant to ORS 646.638(1), Samantha Gavros and Kristl Cook seek actual damages or statutory damages of $200, whichever is greater, for Defendant's willful violations. Because Defendant's violations were reckless or knowing within the meaning of ORS 646.638(8)(a), Samantha Gavros, Kristl Cook, and the Oregon Class further seek statutory damages of $200 per class member, or actual damages if greater, recoverable on a classwide basis. Samantha Gavros, Kristl Cook, and the Oregon Class also seek reasonable attorneys' fees and costs to the extent authorized by applicable law, and such other relief as the Court deems appropriate.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, respectfully request that the Court enter judgment in their favor and against Defendant and grant the following relief:

a) For an order certifying the proposed Class pursuant to Federal Rule of Civil Procedure 23, appointing Samantha Gavros and Kristl Cook as Class Representatives, and appointing Plaintiffs' counsel as Class Counsel, as appropriate;

b) For a declaration that Defendant's conduct, as alleged herein, violates the Oregon Unlawful Trade Practices Act, and each other applicable statute referenced in this Complaint;

c) For a declaration that Defendant's labeling, packaging, marketing, distribution, and sale of the Products using the Zero Sugar Representations is false, deceptive, misleading, and/or otherwise unlawful, as applicable under the asserted causes of action;

d) For injunctive and equitable relief to the extent authorized by applicable law, including an order enjoining Defendant from labeling, marketing, advertising, distributing, or selling the Products using the Zero Sugar Representations, and requiring such corrective disclosures or other affirmative measures as may be necessary to remedy the effects of Defendant's unlawful conduct;

e) For actual, statutory, and/or other monetary relief available under the asserted causes of action, including damages under the Oregon Unlawful Trade Practices Act, in amounts to be determined at trial or otherwise permitted by applicable law;

f) For pre-judgment and post-judgment interest on all amounts awarded, to the extent permitted by applicable law;

g) For an order awarding Plaintiffs and the Class members reasonable attorneys' fees, costs, and expenses to the extent authorized by applicable law; and

h) For such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury on all issues and causes of action so triable.

DATED this 14th day of September, 2026.

**Randall K. Pulliam** (*pro hac vice* forthcoming)
**Edwin Lee Lowther III** (*pro hac vice* forthcoming)
**Courtney Ross Brown** (*pro hac vice* forthcoming)
**Nicholas Lorigan** (*pro hac vice* forthcoming)
**Keira Newland** (*pro hac vice* forthcoming)
CARNEY BATES & PULLIAM, PLLC
One Allied Drive, Suite 1400
Little Rock, AR 72202
Tel: (501) 312-8500
rpulliam@cbplaw.com
llowther@cbplaw.com
cbrown@cbplaw.com
clorigan@cbplaw.com
knewland@cbplaw.com

/s/ Nadia H. Dahab
**David F. Sugerman,** OSB No. 862984
**Nadia H. Dahab,** OSB No. 125630
**Jessica Greenlick Snyder,** OSB No. 134911
SUGERMAN DAHAB
101 SW Main Street, Suite 910
Portland, OR 97204
Tel: 503-228-6474
david@sugermandahab.com
nadia@sugermandahab.com
jessica@sugermandahab.com

*Attorneys for Plaintiffs and the Proposed Class*